**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ONVI, INC.<br><br>                 Plaintiff,<br><br>       v.<br><br>RADIUS PROJECT DEVELOPMENT, INC.;<br>JABIL, INC.<br><br>           Defendants. | No. 19-cv-3201 |

## COMPLAINT

Plaintiff, ONVI, Inc. ("ONVI") through its undersigned counsel, for its Complaint against Defendants Radius Project Development, Inc. ("Radius") and Jabil, Inc. ("Jabil") (sometimes collectively referred to as "Defendants") alleges as follows:

## SUMMARY OF ACTION

1.      Defendants took advantage of a new entrepreneur by fraudulently misrepresenting the necessary time and cost required to bring his innovative dental tool to market while concealing their gross mismanagement and failures in developing the product for the purpose pocketing millions of dollars while they refused to devote their full resources to the project.

## THE PARTIES

2.      Plaintiff ONVI is a corporation formed under the laws of Illinois with its principal place of business in Illinois.

3.      Defendant Radius Project Development, Inc. is a corporation formed under the laws of Delaware with its principal place of business in Massachusetts.

*CHI 69871370v1*

4.     Defendant Jabil, Inc. is a corporation formed under the laws of the State of Michigan, with its principal place of business in the state of Florida.

5.     At all times relevant, Jabil was a parent company of Radius Product Development, Inc. and acted within the scope of its agency relationship with Radius.  In or around 2013, Jabil acquired Radius and certain Jabil employees were directly involved with the ONVI relationship.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interests and costs.

7.     This Court also has jurisdiction over Defendants pursuant to 735 Ill. Comp. Stat. Ann. 5/2-209(b)(4) because Defendants do business within Illinois.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

9.     Dr. Craig Kohler is a long-time and successful dentist.

10.     After decades practicing as a successful dentist, Dr. Kohler began a complimentary career as an inventor of revolutionary dental technology for which he formed a dental startup company – ONVI – to develop and commercialize his dental-technology inventions.

11.     Dr. Kohler is the principal of ONVI, which he formed as a health care technology start-up to develop and market his dental technology inventions. ONVI's featured product was "Prophix" – a wireless toothbrush that enabled users to take video or still photographs while brushing their teeth.  While brushing with Prophix, users could view live footage of their teeth and inside of their mouths on smartphones.  The consumer would be able to brush and clean their

mouth better and communicate possible concerns with their dental professionals by taking pictures of the concern area and storing them on their phone. The Prophix technology promised to be a revolutionary dental product, allowing users to better monitor the care of their teeth and gums and serving as a remote diagnostic tool for dental professionals. If the user of Prophix had a question about something on their video, they could then send the image to their dentist to see whether an appointment was necessary or if there was some course of action that the user could take without the need for a dental appointment. Prophix was also intended for use in dental office to improve communication between the dentist and patient by allowing dentists to show their patients real-time images of any issues with their teeth.

12.     After inventing Prophix, Dr. Kohler explored the possibility of bringing the video toothbrush to the commercial market so that it could be sold to consumers. The next step was to develop a working prototype.

13.     Dr. Kohler, a full-time practicing dentist without any experience in bringing a product to market, sought assistance of professionals to help ONVI commercialize its product.

**Radius Misrepresents its Capabilities**

14.     Defendants touted themselves as having the experience and expertise necessary to get innovative dental tools like Prophix to the commercial market.

15.     In May of 2014, ONVI reached out to Radius and advised it of the invention and ONVI's desire to commercialize Prophix.

16.     ONVI paid Radius $15,000 for proof of concept to enable Radius to provide ONVI with a reliable quote of the time and cost required to bring Prophix to market.

17.     In May of 2014, Radius product manager Joe Tokich informed ONVI that Radius only accepts two projects from new entrepreneurs per year and that Prophix would be one of them.

18.     ONVI specified to Radius, including Tokich, the critical importance of getting Prophix to market expeditiously.

19.     Radius, through Tokich and others, acknowledged this need and represented to ONVI that it was capable of producing a working prototype of Prophix that a manufacturer could tool and scale up within one year.

20.     ONVI also advised Radius that, as a new and inexperienced entrant to the design and development world, it needed to rely upon and trust Radius to bring Prophix to market on time and within budget.

21.     Encouraging that trust, Radius held itself out as a company with expertise in the field of commercializing products like Prophix and bringing them to market.

22.     Radius billed itself as a "one-stop shop" that could handle the entire design and development of a product like Prophix.

23.     During conversations in or around July and August of 2014, ONVI conveyed to Radius, namely Tokich and Dan Hernandez, the particular importance of the video/streaming functionality of Prophix with blue-tooth and WiFi enabled devices and its importance for the project's success.

24.     Both individuals acknowledged the importance of Prophix's streaming functionality and they further represented that Radius had substantial experience and capabilities relevant to the hardware and software design aspects of the Prophix product. Radius represented to ONVI that it had the resources and expertise to provide end-to-end services—from product development to commercialization.

25.     ONVI believed that Radius intended to complete the entire project "in-house" and was unaware that Radius needed to, and intended to, engage with other companies for the purpose

of working on the Prophix's video/streaming functionality with blue-tooth enabled devices that involved electrical engineering experience.

26.     Radius never disclosed to ONVI that it would need to outsource critical components of Prophix's development to subcontractors; nor did it disclose that it would be marking up the cost of outsourced costs to ONVI.

27.     Radius provided a proposal to ONVI that promised deadlines and deliverables that would result in a working prototype suitable for commercial launch of Prophix.

**Radius Misrepresents the Time And Cost Required to Develop Prophix**

28.     In or around July of 2014, Radius, through Tokich, representing to Dr. Kohler of ONVI that Radius was capable of providing the design and engineering services necessary to get the Prophix product ready for manufacture and commercial sales for $1,316,650.

29.     Thereafter, ONVI met with Hernandez on August 8, 2014 who confirmed that Radius was capable of completing a working prototype of Prophix within one year.

30.     Radius knew or should have known that it was incapable of completing the Prophix project for $1,316,650 and in within the promised time frame.

31.     Relying on Radius' representations and promises, ONVI paid over $1.5 million dollars to Radius for its purported services.

32.     Radius fell behind on its promised deadlines and did not provide satisfactory explanation for doing so.

33.     Unfortunately, after more than four years and paying Radius over $1.5 million dollars the Prophix project was far from ready for commercialization and had critical product issues that included, but were not limited to, overheating, randomly shutting down, poor image quality, and extreme video lag time.

34.   Radius was never able to provide ONVI with a working prototype of Prophix that was suitable for commercialization.

**Radius, Without ONVI's Knowledge, Delegates Critical Tasks to Subcontractors While Rotating Through Five Project Managers in Three Years**

35.   Radius fell dramatically short of delivering a working prototype ready for launch within the time period, and for the price, it had promised.  Moreover, Radius failed to communicate the project's many shortcomings to ONVI on a timely basis, leading ONVI to believe the project was on track until well after it had run up service costs far beyond the original budget.

36.   Unbeknownst to ONVI, Radius did not have the requisite experience and capability to develop Prophix but, rather, held its specialty in industrial product development and did not have substantial experience in software driven products like Prophix.

37.   Specifically, no one from Radius advised ONVI that it did not intend to assign any electrical engineers to the Prophix project.

38.   At its Chicago location, Radius mostly employed mechanical engineers and industrial designers.  To the extent it even had such employees, Radius did not assign employees that were familiar with developing bundled solutions with hardware and software such as user experience, web application and integrated communications for devices like Prophix.

39.   Exacerbating the company's lack of experience relevant to a product like Prophix, it, over a three-year period, assigned five different project managers to the project.

40.   Over the years, Radius rotated project managers to and from Prophix as follows:

| | |
|---|---|
| Project Manager #1 | June 2014 to February 2015 |
| Project Manager #2 | February 2015 to March 2016 |
| Project Manager #3 | April 2016 to August 2016 |

| Project Manager #4 | September 2016 to January 2017 |
|---|---|
| Project Manager #5 | January 2017 to August 2017 |

41.    Moreover, each of the project managers that Radius assigned to Prophix were inexperienced regarding video-connected devices and the technology requirements that required electrical engineering expertise.

42.    It was clear to ONVI that each new project manager received little if any pass down information from his predecessor and required substantial time to get up to speed on the project, resulting in severe delays.

43.    The result, not surprisingly, was a complete lack of continuity and communication among the constantly changing Radius project team members assigned to the Prophix project.

44.    With every project manager change, Prophix suffered from a loss of context, knowledge and history of the project and the issues and solutions.

45.    ONVI's principal, while running a full-time dental practice and tending to other Prophix-related responsibilities, was forced to repeatedly re-explain basic features of the product to its project managers.

46.    While rotating numerous project managers in and out of Prophix project, Radius failed to deliver on its promises relating to Prophix in the following ways:

a.    As a result of its inadequate research, Radius unsuccessfully attempted to use a wired breadboard to get a camera and lens solution for Prophix but failed to timely realize that a wired breadboard could never simulate a wireless produced image;

b.    Radius entirely mismanaged its relationship with its subcontractor, Design Net, by failing to execute any written purchase order with its subcontractor to properly define the scope of work;

    c.   Radius further failed to facilitate communication between its subcontractor, Design Net, and ONVI until 9 months passed resulting in extensive work that was both directionless and unauthorized;

    d.   Radius failed to meaningfully reduce the BOM (Base of materials) for Prophix which was necessary to attract investors and manage the product's price point;

    e.   As a result of mismanagement by Radius, Prophix did not function properly and, instead, overheated and shut down in a manner that prohibited its commercialization; and

    f.   Radius' development and design resulted in a prohibitive time lag between what was being brushed and what was being shown on the Prophix user's screen.

47.    Radius controlled the flow of information regarding Prophix's development but did not inform ONVI of any of the above-listed failures in a timely manner.

48.    Radius did not, in a timely manner, allow ONVI to directly interface with the subcontractors that Radius was using. This delayed the project's development substantially.

49.    Instead, Radius fraudulently concealed the myriad of issues it was experiencing relating to Prophix's development and employed "band-aid" solutions for the purpose of leading ONVI to believe that everything was going according to schedule and so that ONVI would keep making payments to Radius.

**Radius Misleads ONVI Into Believing Prophix is On Track To Reach the Commercial Market in a Timely Manner**

50.    From January 26, 2016 to January 31, 2016, ONVI met with Radius at Radius' Hong Kong location. There, Tokich and other Radius representatives actively led ONVI to believe that everything was on track for a timely launch of Prophix. Tokich did not reveal any of the issues related to the prototype.

51.    Shortly thereafter, Tokich met with Dr. Kohler at Dr. Kohler's office and represented again that Radius was capable of getting Prophix to market in a timely manner.

52.     In February of 2016, ONVI and Tokich toured another manufacture, this one in Eau Claire Wisconsin, where ONVI was again led to believe that everything was on track with the development of Prophix and was not advised of any of the problems that were being actively experienced by Radius in developing Prophix.

53.     As a result of Radius' concealment and failure to adequately communicate its setbacks to ONVI, ONVI proceeded as though the product was going to launch on time.

54.     To that end, with encouragement and direction from Radius, ONVI planned a "launch party" that was scheduled around expectations set by Radius.

55.     At the direction and with the encouragement of Radius, ONVI spent months preparing for the Prophix launch party.

56.     ONVI's preparation for the launch of Prophix included hiring, at the direction and with the encouragement of Radius, a public relations firm and social media company.

57.     Specifically, the director of research for Radius, recommended a public relations firm for ONVI to use in advance of the product launch.

58.     In March of 2016, a public relations strategy was developed relying on expectations set by the representations of Radius.

59.     Relying on Radius's statements concerning the project's progress and timeline, ONVI spent hundreds of thousands of dollars on public relations, including the development of a commercial and other marketing materials, in preparation for a successful launch party and the successful launch of Prophix.

60.     ONVI met with additional investors and began taking steps to start receiving pre-orders for Prophix.

61. It was a few months before Prophix was set to officially launch, in late April of 2016, when Radius finally revealed the device's serious "lag time" issue where the video display was showing footage that was substantially behind that which the camera was capturing in real time.

62. Despite the lag time issue and the other serious development issues it knew of, Radius again misled ONVI by telling it to proceed with the launch party because Radius would deliver the completed project in a timely manner.

63. Radius attended the Prophix launch party and listened to Dr. Kohler praise the company in public comments but did not advise Dr. Kohler or anyone else with ONVI of the substantial development issues it was experiencing with Prophix.

64. In April of 2016, ONVI and Radius met at Radius in Chicago where Radius again led ONVI to believe that Prophix was on track to reach the commercial market. Radius did not disclose the issues it was experiencing with Prophix at the time.

65. On May 6, 2016, Radius met with ONVI to present packaging for Prophix and, during the meeting, continued to conceal the myriad of other issues – beyond lag time – that it was continuing to experience with the project.

66. On May 16, 2016, Tokich represented to ONVI and outside manufacturers that Prophix was in a position to begin the manufacturing process and be actively manufacturing Prophix for the 2016 Christmas season.

67. Thereafter, on November 5, 2016, Tokich again represented that Prophix's development had progressed sufficiently to plan a trip to China to meet with manufacturers that could effectuate the product's scale up.

68.     Radius told ONVI and the Chinese manufacturer that that the working prototype of Prophix would be sent to China for the trip in December of 2016 despite knowing that it would take months and cost millions of dollars to complete a working prototype that was ready to present to a manufacturer.

69.     Prophix, however, was far from being ready for manufacturing as a result of the several development issues Radius was experiencing with Prophix – the majority of which it did not disclose to ONVI.

70.     Radius went so far as to actively discourage ONVI from having Prophix independently tested by a third-party for the purpose of gauging its viability.

71.     At that point, the launch of Prophix needed to be postponed and all preorders were either cancelled or delayed indefinitely.

**Jabil's Involvement**

72.     While Jabil, as the principal of Radius, is responsible for all of acts and omissions of Radius, Jabil was also directly involved in the failures relating to Prophix.

73.     Jabil describes itself as the premier product development firm worldwide.

74.     While Jabil traded on ONVI's efforts and innovation by claiming to the public and its potential clients and customers that Prophix was an example of Jabil's ability to bring innovative products to market expeditiously, Jabil outright refused to devote its resources to Prophix's development.

75.     Instead, Jabil knowingly allowed the development of Prophix to languish and provided no support to the product.

76.     Jabil did, however, "claim" Prophix when it was to its benefit.  For example, in the Fall of 2016, Jabil asked ONVI to deliver a presentation on Prophix to its potential clients and customers.

77.     Jabil, despite knowing the many failures that Prophix was experiencing as a result of its acts and omissions and those of Radius, allowed ONVI to unknowingly misstate the progress that Prophix had made toward reaching the commercial market.

78.     Thereafter, as Defendants' failures started to become apparent to ONVI, ONVI reached out directly to Jabil only to be ignored.

79.     Jabil, despite its supposed capabilities and resources, did not provide ONVI with the support necessary to get Prophix to market.

**Defendants' Failure to Deliver on Their Promises**

80.     In addition to the more than $1.5 million dollars paid directly to Radius, ONVI paid an additional half-million dollars to public relations and social media companies at the direction of Radius to promote Prophix—costs ONVI incurred because Radius failed to disclose to ONVI that the development project was way off track due to Radius' project mismanagement.

81.     After waiting four years and spending more than $2.3 million dollars, ONVI was finally notified of some of the serious failures caused by Radius' mismanagement.

82.     Radius' "solution" to its mismanaged project was to offer ONVI a new project proposal, purporting to complete the Prophix project for an **additional** $1,777,000 to $2,507,000 plus additional contingency costs through six new "phases" over another seven to ten months.

83.     To justify its new proposal, Radius cobbled together its best "consultant-speak" and simply placed different labels on tasks that it either never completed or badly mishandled during the initial four years it spent on the project.

84.     Despite their experiencing these many difficulties and never finishing the job for which it was paid seven figures, Defendants falsely trumpeted ONVI and Prophix as a "success story" on their website, in presentations to potential clients, and at the Consumer Electronic show.

85.     Radius claimed the following:

"Radius was approached by ONVI, a pioneer in dental health, with the vision of improving and empowering oral healthcare through a better at-home experience. Together, we created Prophix, a groundbreaking new video toothbrush."

86.     Radius never disclosed the full extent of its Prophix failures to ONVI and ONVI was forced to learn about them through its own investigation.

87.     Prior to Radius' failed commercialization of Prophix, ONVI was valued at over $15 million dollars.  Most of that value has now been erased.

88.     As a result of Radius' conduct, ONVI has suffered substantial damages such as long delays, lost value, lost revenues and profits, lost time and lost customers and business.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud Act – Against Radius**

89.     Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth herein.

90.     The Illinois Consumer Fraud Act ("ICFA") declares the following to be unlawful: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such fact…in the conduct of any trade or commerce[.]"  815 ILCS 505/2.

91.     Radius' conduct described herein constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of trade or commerce.

92.     Radius intended that ONVI rely on its conduct, including its statements that it was an expert in the field of bringing products like Prophix to market, that its product development and design work would be professionally and properly completed, that it could timely complete the project for less than $1.5 million in under one year, and that the project was on track for a timely commercial launch.

93.     Additionally, Radius knew that it was experiencing substantial difficulties in its attempt to complete the Prophix project but concealed that information from ONVI while attempting to employ "band aid" solutions for the purpose of causing ONVI to believe that the Project was on track and causing ONVI to continue making payments to Radius.

94.     Radius knew that ONVI was a new entrant to the development world and did not have knowledge or experience in bringing products like Prophix to the commercial market.

95.     The representations by Radius were material because, *inter alia,* the amount of money that it would cost to design and develop Prophix was critical to ONVI's decision to even attempt to bring it to market.

96.     Radius knew or should have known that its real price for the work required for Prophix was between $3,093,650 and $4,284,000 and that the project would take it multiple years to complete.

97.     Radius, however, knew that ONVI would not have agreed to a proposal of between $3,093,650 and $4,284,000 over several years.

98.     Had ONVI known that Radius was not able to bring Prophix to market within one year for under $1.5 million, it would not have engaged Radius.

99.     ONVI relied upon the conduct and material misstatements of Radius to its detriment.

100.    Radius failed to produce its deliverables in a timely, professional and competent manner.

101.    As a proximate cause of Radius' conduct, ONVI suffered substantial damages in an amount to be proven at trial and is entitled to reasonable attorney fees under 815 ILCS 505/10a.

**SECOND CAUSE OF ACTION**
**Common Law Fraud – Against Radius**

102.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 101 above as if fully set forth herein.

103.    Radius made false statements of material fact to ONVI with the intent that ONVI would rely upon those statements.

104.    Such false statements include, but are not limited to, Radius' representation that it was capable of delivering on its promise to prepare Prophix for commercialization for under $1.5 million within one year.

105.    Such false statements also include Radius' representations that the project was on track while it knew it was experiencing serious setbacks.

106.    ONVI relied upon Radius' misrepresentations of fact to its material detriment.

107.    As a proximate cause of ONVI's reliance on Radius false statements of material fact, ONVI suffered substantial damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### Fraud in the Inducement – Against Radius

108.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 107 above as if fully set forth herein.

109.    Radius falsely represented that it was capable of delivering on its promise to prepare Prophix for commercialization for under $1.5 million and within two years.

110.    ONVI relied upon Radius' statements to its material detriment by engaging Radius and paying it more than $1.5 million and devoting four years of professional effort on Prophix.

111.     Radius knew or recklessly disregarded the reality that the real price of the work required was between $3,093,650 and $4,284,000 and that it would take Radius several years but that, if they had conveyed this reality to ONVI, ONVI would not have agreed to move forward with the engagement.

## FOURTH CAUSE OF ACTION
### Fraudulent Concealment – Against Radius

112.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 111 above as if fully set forth herein.

113.    While working on the Prophix project, Radius concealed several material facts from ONVI under circumstances that created a duty to disclose the information to ONVI.

114.    Radius, however, intended to induce a false belief in ONVI that the Prophix project was proceeding without any substantial delays or other issues that would prevent a timely commercial launch.

115.    Given that Radius controlled the flow of information concerning Prophix's development, ONVI, could not have discovered the truth that Radius was concealing from it through reasonable inquiry or inspection.

116.    The information Radius concealed from ONVI was such that ONVI would have acted differently had it been aware of the information.

117.    ONVI relied upon Radius' statements and the false belief created by Radius to its material detriment by paying Radius more than $1.5 million and by paying others approximately $600,000.

## FIFTH CAUSE OF ACTION
### Promissory Estoppel – Against Radius

118.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 117 above as if fully set forth herein.

119.    Radius made unambiguous promises to ONVI including that it was capable of preparing Prophix for commercialization for under $1.5 million in under one year.

120.    Radius expected and could foresee that ONVI would rely upon its promises.

121.    ONVI relied on Prophix's promise to its material detriment including by paying Radius more than $1.5 million and by paying others approximately $600,000.

## SIXTH CAUSE OF ACTION
### Breach of Contract – Against Radius

122.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 121 above as if fully set forth herein.

123.    A valid and enforceable contract existed between ONVI and Radius.

124.    Radius offered to provide the design and engineering services necessary to get the Prophix product ready for manufacture and commercial sales for $1,316,650.

125.    ONVI accepted that offer.

126.    ONVI provided good and valuable consideration to Radius through seven-figure payments to Radius.

127.     In the parties' contract, Radius agreed that any intellectual property generated through the development work on Prophix was, at the very least, jointly owned by ONVI.

128.     Radius also agreed to perform its services in accordance with generally accepted professional product development practices.

129.     Radius breached the contract between ONVI and Radius in multiple ways including, but not limited to:

        a.     Wrongfully refusing to provide ONVI with copies of the native 3D CAD files relating to the ONVI Prophix product; and

        b.     Failing to perform its services in accordance with generally accepted professional product development practices.

130.     As a direct and proximate result of Radius' breach of contract, ONVI has suffered damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud Act – Against Jabil**

131.     Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 130 above as if fully set forth herein.

132.     As Radius' principal, Jabil is responsible for the acts and omissions of Radius described herein.

133.     Jabil is additionally liable under the ICFA for its own direct conduct as well.

134.     The ICFA declares the following to be unlawful: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such fact…in the conduct of any trade or commerce[.]"  815 ILCS 505/2.

135.    Jabil's conduct described herein constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of trade or commerce.

136.    Jabil intended that ONVI rely on its conduct, including its statements that it was an expert in the field of bringing products like Prophix to market and that Prophix was positioned for market entry.

137.    Additionally, Jabil knew that Prophix was experiencing substantial difficulties but concealed that information from ONVI so that it could use ONVI as an example of its success in developing innovative products.

138.    Jabil knew that ONVI was a new entrant to the development world and did not have knowledge or experience in bringing products like Prophix to the commercial market.

139.    Jabil's conduct was material because, *inter alia,* it led ONVI to believe that Jabil and its resources were behind Prophix and that Prophix was, in fact, positioned for a timely market launch.

140.    ONVI relied upon the conduct, statements, and omissions of Jabil to its detriment.

141.    As a proximate cause of Jabil's conduct, ONVI suffered substantial damages in an amount to be proven at trial and is entitled to reasonable attorney fees under 815 ILCS 505/10a.

### EIGHTH CAUSE OF ACTION
**Fraudulent Concealment – Against Jabil**

142.    Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 141 above as if fully set forth herein.

143.    Jabil is liable for fraudulent concealment as a result of its own acts and omissions.

144.    Jabil concealed several material facts from ONVI under circumstances that created a duty to disclose the information to ONVI.

145. Jabil intended to induce a false belief in ONVI that the Prophix project was proceeding without any substantial delays or other issues that would prevent a timely commercial launch.

146. ONVI, could not have discovered the truth that Jabil was concealing from it through reasonable inquiry or inspection.

147. The information Jabil concealed from ONVI was such that ONVI would have acted differently had it been aware of the information.

## NINTH CAUSE OF ACTION
### Conversion – Against Both Defendants

148. Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 147 above as if fully set forth herein.

149. Any intellectual property generated through the development work on Prophix was, at the very least, jointly owned by ONVI.

150. Despite demands from ONVI, however, Defendants have wrongfully refused to provide ONVI with copies of the native 3D CAD files relating to the ONVI Prophix product.

151. Defendants' assumption of exclusive control and dominion of property owned by ONVI was unauthorized.

152. ONVI has an immediate, unconditional and absolute right to the native 3D CAD files that it has demanded.

## TENTH CAUSE OF ACTION
### Unjust Enrichment – Brought in the Alternative to Counts Six and Twelve Against Both Defendants

153. Plaintiff realleges and thereby incorporates each and every allegation set forth in paragraphs 1 through 152 above as if fully set forth herein.

154.    ONVI conferred a benefit upon Defendants by paying them in excess of $1.5 million.

155.    Defendants' retention of that benefit is unjust given that Radius failed to deliver on its promise to provide ONVI with a working prototype of Prophix that was suitable for commercialization and grossly mismanaged the Prophix project while concealing its mismanagement from ONVI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the entry of a judgment:

1.    Awarding compensatory damages in an amount to be determined at trial;

2.    Awarding punitive damages in an amount to be determined at trial;

3.    Awarding Plaintiff's costs and attorneys' fees incurred in connection with this action; and

4.    Granting such other and further relief as this Court may deem just and proper.

Dated: May __, 2019

Respectfully submitted,

By:   /s/ John C. Ellis
One of the Attorneys for Plaintiff

John C. Ellis
Hattie B. Strange
**ELLIS LEGAL P.C.**
200 West Madison Street, Suite 1940
Chicago, Illinois 60606
(312) 967-7629
hstrange@ellislegal.com