UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ONVI, INC., | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) 19 C 3201 |
| | ) |
| vs. | ) Judge Gary Feinerman |
| | ) |
| RADIUS PROJECT DEVELOPMENT, INC., and JABIL, INC., | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

**MEMORANDUM OPINION AND ORDER**

As discussed in the court's summary judgment opinion, Doc. 165 (reported at 2022 WL 2022 WL 540796 (N.D. Ill. Feb. 23, 2022)), this diversity suit centers on the alleged failures of Radius Project Development, Inc., and its parent company, Jabil, Inc., to assist Onvi, Inc., with its development and marketing of Prophix, an electric toothbrush featuring a high-resolution camera for transmitting images to the user's dentist. Trial is set for September 30, 2022. Doc. 201. Arguably the most significant pretrial motion is Defendants' motion *in limine* to exclude the opinion testimony of Carrie Distler, Onvi's damages expert. Doc. 184. The motion, on which the court heard argument at last week's final pretrial conference, Doc. 209, is granted in part and denied in part.

Distler's expert report presents two damages opinions. The first estimates Onvi's lost profits due to the failed (or, at a minimum, delayed) commercialization of Prophix. Doc. 186-2 at ¶¶ 40, 80. The second estimates the costs incurred by Onvi in reliance on Defendants' alleged promises concerning Prophix's development. *Id*. at ¶ 40. Defendants maintain that the lost profits opinion is inadmissible under Evidence Rule 702 because it does not reflect Illinois law governing lost profits for new businesses or products. Doc. 186 at 3-7. Defendants further

1

maintain that both damages opinions are inadmissible under Rule 702 because they reach conclusions based on unreliable data. *Id*. at 7-11.

Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The district court serves as the "gate-keeper who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert," *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (internal quotation marks omitted), and "has 'broad latitude' to determine how to evaluate expert testimony," *United States v. Hill*, 818 F.3d 289, 297 (7th Cir. 2016) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999)). The expert's proponent bears the burden of proving by a preponderance of the evidence that the expert's testimony satisfies Rule 702. *See United States v. Saunders*, 826 F.3d 363, 368-69 (7th Cir. 2016); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

The court first considers Distler's lost profits opinion. Under Illinois law, damages, including lost profits damages, may be awarded only if they are "proved with a reasonable degree of certainty." *Milex Prods., Inc. v. Alra Lab'ys, Inc.*, 603 N.E.2d 1226, 1235 (Ill. App. 1992); *see also TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (7th Cir. 2007) ("The party claiming damage bears the burden of proving … damages to a reasonable degree of certainty."). This requirement presents difficulties for a "new business" that has no "track record of profits" from which lost profits might be demonstrated. *Ivey v. Transunion Rental Screening*

*Sols., Inc.*, 186 N.E.3d 1076, 1085 (Ill. App. 2021) (internal quotation marks omitted). For such businesses, the "general rule" is that lost profits "are considered too uncertain, specific and remote to permit recovery." *TAS Distrib.*, 491 F.3d at 633. "The reasoning behind the rule is simply that a new business has not demonstrated yet what its profits will be." *Id*. at 634. The prohibition imposed by the "new business rule" is subject to exceptions, including that such damages may be recovered where a business "is simply an absorption or extension of a previously established successful operation and the venture's future is less in doubt," *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994), or where the product was a new one in an already "established market" from which lost profits may be ascertained, *Milex*, 603 N.E.2d at 1237. Estimating profits under the "established market" exception requires reference to the performance of "comparable products." *TAS Distrib.*, 491 F.3d at 6335; *see also Ivey*, 186 N.E.3d at 1087 (recognizing that the exception may be met with data from "another entity operating a comparable business").

  Onvi argues that the Supreme Court of Illinois would not apply the new business rule in this case. The argument fails to persuade. True enough, as Onvi observes, the state supreme court recently allowed appeal in *Ivey*, *see* 184 N.E.3d 998 (Ill. 2022) (allowing leave to appeal), where, Onvi says, a dissenting justice on the state appellate court "heavily criticized the new business rule," Doc. 199 at 14. Onvi overreads the *Ivey* dissent, which accepted the new business rule generally and contended only that the majority interpreted the rule's exceptions "too narrowly." 186 N.E.3d at 1092 (Walker, J., dissenting). In any case, Onvi provides only speculation for the proposition that the state supreme court is set to jettison Illinois's "long-standing" new business rule. *Milex*, 603 N.E.2d at 1236.

Thus, the new business rule is good law in Illinois, and Onvi does not dispute that it is a new business or that Prophix is a new product. As for application of the rule here, Onvi submits that Distler's lost profits model takes proper account of an established market for electric toothbrushes, allowing her to estimate lost profits under the rule's "established market" exception. Doc. 199 at 14-15. Onvi's position fails on two grounds.

First, Distler's lost profits opinion employs very little competitor data. Relying heavily on an earlier financial projection prepared by Onvi, Distler estimated sales volume using Prophix's online advertising data. Doc. 186-2 at ¶¶ 49, 53; Doc. 199 at 5-6. Distler then audited the reasonableness of that estimate using sales data from an electric toothbrush called "Quip" that retails for $45. Doc. 186-2 at ¶ 19; Doc. 186-3 at 40-41 (111:7-112:13); Doc. 199 at 6. Distler researched other electric toothbrushes, but that research served only to help her understand how Onvi reached its planned price point ($349, or $299 for pre-order sales). Doc. 186-2 at ¶¶ 19-20, 55; Doc. 199 at 5. Thus, Distler's lost profits opinion uses Quip's sales data only to audit one input (sales volume) of her damages model.

Although it is uncertain exactly how much competitor data is required to satisfy the new business rule, Distler's lost profits model plainly does not use enough. In *Smart Marketing Group v. Publications International, Ltd.*, 624 F.3d 824, 831 (7th Cir. 2010), the plaintiff, a new business attempting to sell sales leads to automobile dealers, attempted to show lost profits with reference to an existing market for similar sales leads. The Seventh Circuit rejected the attempt, reasoning that, even assuming the new business had shown an established market price for leads, it "did not provide any hard data from comparable firms to corroborate [its] calculation" that it would have succeeded in making sales. *Ibid*. Here, analogously, Distler audited her sales volume estimate with those of another toothbrush, but she does not use competitor data to

4

explain why Prophix would have sold so successfully at Onvi's much higher price point. And Distler's opinion is quite unlike that offered in *Milex*, where an expert successfully estimated lost profits for a company launching a pharmaceutical drug based on "authoritative sources" of competitors' prices, the total number of prescriptions in the market, and the average size of a prescription. 603 N.E.2d at 1231, 1236.

Second, even if Distler had considered *enough* data about other toothbrushes, her lost profits model still does not rely on data for an established product *comparable* to Prophix. As noted, Onvi planned to retail Prophix for $349, or $299 for pre-orders. Doc. 186-2 at ¶ 55. It designed the product to include a high-resolution camera for transmitting images to dentists, Bluetooth capability, and other features—including live viewing via a smartphone application and interchangeable toothbrush heads for plaque removal, contour cleaning, and gum massaging—unavailable in existing electric toothbrushes. *Id*. at ¶¶ 22-23. The $45 Quip, the product used by Distler as a sales volume comparator, has none of Prophix's extra features. *Id*. at ¶ 19. Given these highly significant differences, Quip cannot reasonably be used to predict sales volume—let alone profit margin or overall profits—for Prophix with the degree of rigor required by the new business rule. *See TAS Distrib.*, 491 F.3d at 635 (holding that new products "incorporat[ing] both the Temp-A-Start and Temp-A-Stop technologies" were not comparable to an existing product incorporating only one such technology); *Stuart Park Assocs. L.P. v. Ameritech Pension Tr.*, 51 F.3d 1319, 1328 (7th Cir. 1995) (holding that lost profits for a new residential development "to be built on a barren piece of undeveloped land" could not be reasonably predicted using profits from "different pieces of real estate from different markets," as those properties did "not provid[e] a self-evident basis" from which to ascertain lost profits incurred for the new residential development); *Kinesoft Dev. Corp. v. Softbank Holdings Inc.*,

139 F. Supp. 2d 869, 910 (N.D. Ill. 2001) (holding that the creator of a new video game had not shown lost profits with reasonable certainty where it provided no "analysis of a comparable company selling comparable games") (cited with approval in *TAS Distrib.*, 491 F.3d at 634-35).

Because Distler's lost profits opinion cannot show lost profits with the degree of certainty required by Illinois law—and because Onvi points to no other evidence that would allow the jury to determine lost profits with that degree of certainty—her opinion cannot assist the jury in determining the amount (or even the existence) of Onvi's lost profits. Distler's opinion is therefore excluded under Rule 702. *See Euroholdings Cap. & Inv. Corp. v. Harris Tr. & Sav. Bank*, 602 F. Supp. 2d 928, 939-40 (N.D. Ill. 2009) (excluding expert testimony as to a new venture's lost profits as "too speculative"); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 817 (N.D. Ill. 2005) (excluding an expert opinion that calculated lost profits with reference to eight existing businesses because those businesses were incomparable to plaintiff's business, rendering the opinion "unreliable and speculative"); *cf. Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862-66 (7th Cir. 2009) (affirming the exclusion of lay lost profits testimony where the witness lacked particularized knowledge of the company's lost profits).

That leaves Distler's opinion regarding damages for costs incurred. Defendants maintain that Distler's opinion is unreliable because it relies on Onvi's "self-serving, untested, and unproven financial projections and data." Doc. 186 at 7. Specifically, Defendants complain that Distler relied exclusively on cost data provided by Onvi, and they assert that she failed to investigate whether those costs were incurred solely for the development of Prophix or whether the expenditures have continuing value to Onvi. *Id.* at 10.

6

Under Rule 702, the court must ensure that "the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). It is the jury's role to assess "the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis." *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 360 (7th Cir. 2015) (internal quotation marks omitted); *see also Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("Reliability … is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced."); *Stollings*, 725 F.3d at 766 (explaining that the district court "should permit the jury to weigh the strength of the expert's conclusions").

Distler explains that her costs incurred opinion considers the expenditures that Onvi has made (and will have to make again if it continues to develop Prophix), Doc. 186-2 at ¶¶ 40, 42, and she discloses a schedule of those expenditures, *id*. at pp. 59-60. The court cannot say that this is an unreliable methodology for calculating reliance damages or that Distler considered insufficient data in employing that methodology. True enough, Defendants identify arguable faults in the underlying data Distler ran through her model. But those criticisms go to the "weight and credibility of [her] expert testimony," not its admissibility under Rule 702. *Stollings*, 725 F.3d at 765; *see also id*. at 767 ("The [district court] should have let the jury determine how the uncertainty about [one input of the plaintiff's expert's model] affected the weight of [the expert's] testimony. [The defendant] was free to use cross-examination to attack the assumption and to ask [the expert] how altering the assumption would affect his analysis.");

7

*Manpower*, 732 F.3d at 809 ([A]n expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility.").

      In sum, Defendants' motion *in limine* to exclude Distler's expert testimony is granted as to her lost profits damages opinion and denied as to her costs incurred opinion.

September 13, 2022                                          _____
                                                                            United States District Judge